I believe, although both of us are appellants, that my appeal was filed first, Mr. Sletteland's appeal was filed first, so I'm assuming that I'm going first. And I would like, my name is Larry Hunter, I represent James Sletteland, who was the plaintiff in the underlying action. He's an appellant and also an appellee in this matter. And I would like to reserve approximately seven minutes to respond, since I'll be responding to you. That will make it easier for you. You reserve quite a bit of time. May it please the Court. The essence of this case is the relationship between Mr. Sletteland and Mr. Blendu. And there are four issues on appeal by me and some by Mr. Trout, but I believe that all of them relate to that relationship between the two men. Mr. Sletteland and Mr. Blendu were two of five owners of Billings Generation, Inc., who was the general partner of Yellowstone Energy Limited Partnership, which ran a generation plant in Montana. But Mr. Blendu and the other four, or excuse me, the other three owners of BGI, Billings Generation, Inc., were all residents of the State of Idaho. Mr. Sletteland was a resident of the State of New York. None of them were residents of the State of Montana. And the, although Billings Generation, Inc. was the general partner of this partnership that ran this plant in Montana, it was a Boise, Idaho organization and a corporation and ran a business out of Boise. The trial at this matter was one in which Mr. Sletteland was claiming that an agreement had been made between the two of them that they would file a lawsuit against the other three owners of BGI. There had been a deteriorating relationship amongst the five owners for some time, and the two of them decided that they needed to file this complaint. The complaint was filed in Montana, and it, but it related to the relationship of those five people as Billings Generation, Inc. The court found that there was such an agreement between the two of them, between Mr. Sletteland and Mr. Blendu, and also found that an underlying portion of that agreement was that they were going to share costs and fees related to that complaint. In its decision, the court said the court has to look at the totality of the companies that might support one side or the other, and went down below and said, in my judgment, that the plaintiff and the defendant agreed to file this complaint and the intent of accomplishing these two goals, and that they agreed to share the costs and expenses on a 50-50 basis. So the court, after, and this, the way this was decided was after a court trial of three days in which the court listened to the evidence and made an oral ruling at the end, which was quite lengthy and which ended up being the findings and fact and conclusions of law in the case. And he determined, Judge Lodge being an experienced and respected trial judge in, in Idaho, that these two had that relationship. Now, because of the fact that they had that relationship, they had a relationship of this oral agreement, and that also flows through to some of the other issues that are before the court on appeal. The first one is whether or not the court properly ruled with regard to a motion that was brought with regard to the choice of law. It was our contention that Idaho law should be, should be applied with regard to the issue of contribution. The Mr. Blendew brought a motion for summary judgment in which he claimed that Montana law should apply, and therefore, the claims for contribution should be denied. Judge Lodge ruled that the law of Montana should apply because he found the significant contacts  were with Montana. However, this was done before the trial, and I believe that if the judge had had the opportunity to listen to the evidence, and he would have not made that decision, and that's the reason I'm asking this panel to reverse Judge Lodge on that issue with regard to where the most significant contacts were in this case. Did Judge Lodge have a case? Yes, he did. And so are you, so he had the opportunity to hear the evidence at that point? Yes, he did. And was he asked to reconsider in the choice of law? He was not asked to reconsider on the choice of law. There was a motion to reconsider brought by Mr. Blendew. We did not bring a motion to reconsider after a trial, choosing to preserve that issue for appeal. The, as I outlined a little bit earlier, of the five owners of Billings Generation Inc., four of them were Idaho residents. The business of Billings Generation Inc. was run out of Boise, Idaho, and Mr. Slutland was not a Montana resident either. The crux of this lawsuit, not of the one that was brought by Mr. Blendew and Mr. Slutland in Montana, but the crux of this lawsuit was the relationship that developed because of this oral agreement that was made between Mr. Slutland and Mr. Blendew. It was not made in Montana. It was made in Idaho. It related to attorney's fees that had been charged by some of the other owners of Billings Generation Inc. Those fees were billed in Idaho because they were Idaho. That's where the business of Billings Generation Inc. was maintained. So it was the Idaho forum was the forum that the significant contacts existed in in this case. The only contact that Montana had in this case was that the lawsuit that eventually was brought was brought in Montana. But the agreement, and the agreement is what's the crux in this case, was made in Idaho about attorney's fees that were generated in Idaho. So I believe that the court erred in that situation, should not have granted summary judgment on the issue of contribution, and the issue of contribution should be allowed to stand. The significance of that is that we did prevail with regard to some of the attorney's fees that Mr. Blendew and Mr. Slutland had shared. However, we did not, we were not allowed to try to recover the judgment that was entered against Mr. Slutland in the Montana case after Mr. Blendew had settled out. And that is a significant amount of money because there was a judgment against him for over a million dollars against each of the other three. And so the issue of contribution is significant because if it were brought in Idaho, arguably he would have a right to request contribution against those, against Mr. Blendew for the monies that he was found liable for in that lawsuit. The second issue that I would like to deal with is the, our motion for, to amend the history because of the fact that while we were litigating in Idaho, there was an ongoing the ongoing Montana case had been appealed, and they were, we stayed this action while the Montana Supreme Court was considering its, that appeal. If Mr. Slutland had prevailed on that appeal, then the Idaho case either would have been mooted or it would have been moved to this case to be stayed. During the period, after the period of time it was stayed, we began discovery, and we deposed Mr. Blendew. And after I deposed Mr. Blendew, I moved to the court to allow to amend the complaint. The purpose of requesting the amendment for complaint was really to clean up the complaint a little bit because although we were requesting attorneys' fees under the idea of a, of a contract, we had not requested specifically the issue of allowing Mr. Slutland to recover for the judgment under the issues of a contract or, or partnership agreement. So that was one purpose for, well, that was the principal purpose for amending the complaint. The request for the amendment of the complaint was made in October. The case was not tried until, until February. It was four months away. And it did not involve new evidence. It involved strictly a secondary interpretation of the evidence with regard to another cause of action. Wasn't the amendment seeking contribution by a different name? It wasn't contribution by a different name. It was contribution by a different cause of action, a different theory. The, the end result would have been the same, yes. The end result is that we were requesting, instead of having these, a common law contribution claim between two joint court feesers, we were asking for a, for these two partners, or these, or these two people that had made this contract to agree to bring this lawsuit for a recovery of, of the judgment amount under partnership principles, not under contribution principles. Okay. So if Montana contribution law applied, wouldn't that still defeat the amended claim? Well, it's, it would be our argument that the, what we're talking about in Montana was a common law, or was an embodiment of common law contribution among court feesers, not among joint venturers or partners, that partnership law and joint So it would be a different analysis of how the recovery would have been made. And frankly, it was not, Montana law with regard to that issue was not briefed. So I don't know what the Montana law would have been, but the decision of the, of the court and the report and recommendation of the magistrate just dealt with the fact that because the, because contribution had been denied in one category, that it was across the board. I think that the, the real decision there was that contribution wasn't allowed under that joint contribution, or contribution among joint court feesers, not among the joint venturers or, or partners or contractors. Let me ask you this. In, in the case, could you have asked for the damage award to be lessened to reflect the, the proportionate amount of the damage that was attributable to Mr. Sletton, not really on the contribution theory, but just on the theory that proportionately he was only liable for one-third or one-half or whatever the amount of the judgment was? Could you, is, was that, is that a possible approach under Montana law? I appreciate the question. I, I was not the trial attorney in Montana. I frankly do not know what was done or what Montana law allowed in that situation. So I don't know the answer to that. I'm sorry. Mr. Blendu and Mr. Slutland had separate counsel, or had joint counsel in Montana that was handling that lawsuit with the help of the other attorneys whose fees underlie this action. At any rate, the, with regard to the, the amendment, the only reason for it, the reason it was denied is because it was futile. I'm, my position is that it was not futile. In fact, it was a different type of cause of action. The third aspect of the relationship between the two parties is, and I will briefly run through this because I'm running into my time, is, is the money that was lent to Mr. Blendu by Mr. Slutland. It was lent by Slutland PC, and then that, that debt was assigned to Jim Slutland later after the complaint was brought. The court ruled that, and his language was very specific, and I could read it to you, but I don't have time, that, in fact, Mr. Blendu owed the money. He had made some payments against it. He, he counseled Mr. Blendu to pay it, but he found some procedural difficulties with regard to the collection of it. In fact, there were no procedural difficulties. Mr. Slutland, Mr. Slutland did file in the New York Bankruptcy Court to recover that note. Mr. Blendu brought a motion for summary judgment to, to bar that recovery. And after the trial and after the motion for reconsideration and, in fact, during the time that this was briefed, the Bankruptcy Court in New York did make a ruling that, in fact, Mr. Slutland did not have to get the permission of the Bankruptcy Court, that to the extent the Bankruptcy Court permission was granted, that the assignment was allowable, dated back to the effective date of the bankruptcy, to the, of the, of the assignment, and that was in February at the time the complaint was filed. So there is, there is no reason for that, the, the note to be taken care of. It's a small, it's a fairly small amount and should be, should be dealt with by Mr. Blendu. And at this point, there is no reason for it not to be dealt with within the confines of this case. I will reserve the extra five minutes that I've got left. Thank you very much. And we'll now hear from the other side and then there will be about five minutes. Members of the panel, good morning. My name is Kim Trout. I represent Ron Blendu in this matter. I'd like to focus first on our issues related to our cross-appeal and then come back and address the issues related to the original appeal filed by Mr. Sletland. Judge Lodge, for all of his good efforts, ruled from the bench after a three-day trial and made oral rulings with respect to this matter. We believe he made a fundamental error as a matter of law with respect to his finding of an oral agreement between these parties. And the simple reason is this. The record from Mr. Sletland which correctly identifies the relationship of these parties. They each had individual counsel. Mr. Blendu had counsel in Washington, D.C., Mr. Ellis. Mr. Sletland had counsel in New York, Mr. Althoff. They were jointly going to retain Montana counsel, the Goth Waterman firm. And two months later, prior to the entry of the complaint in the Montana litigation, they did exactly that. And by way of a written agreement, they retained Montana counsel to prosecute the action. We believe Judge Lodge did not address this issue in his findings before the court, violated the Montana parole evidence rule, because by entering into the written agreement with Montana merger into the written document meant there was one agreement for the retention of counsel to prosecute the action. And describe to me the contract in that document. It was a contract between whom? It was a contract between Mr. Sletland, Mr. Blendu, and the Goth Waterman firm in which the three of them agreed to split the costs of fees and expenses related to the Montana litigation, which was the principal objective of the parties. Now, I may be wrong, but my impression of that agreement is that it's the law firm on the one side and Mr. Sletland and Mr. Blendu on the other side contracting for their services. Is there anything in that contract that's between Mr. Sletland and Mr. Blendu as to how they're going to share? Judge, I believe the agreement specifically says that they're going to share the fees on a 50-50 basis and be billed separately for their respective portion of the agreement. So I consider it to be a triparate agreement, not just a dual agreement between counsel and the client. And is there anything out of that agreement that tells us how long the sharing agreement shall last? The answer to that question is no, it does not. In fact, it simply says for purposes of the litigation in the Montana court. And so it's our view that with all due respect to Judge Lodge and his choice to issue oral findings right after the trial was completed within 30 minutes of the completion of the trial, that issue of law was never addressed. We raised it pretrial. We also raised pretrial as part of our trial memorandum, which is at ER tab 10, the issue of the Montana statute of frauds. Because if you really examine what Sletland's argument is in this case, because Sletland and the New York lawyer, Mr. Althoff, both agreed and both testified that the only direct client relationship was between Sletland and Althoff's firm, Satterley Stevens, then what the plaintiff's claim really is, is a claim to have Mr. Blendu pay the obligation of Mr. Sletland to the firm in New York. And that's barred by the Montana statute of frauds. So there are two statutes, 2903 and 2904, that we believe Judge Lodge erred on as a matter of law. The second issue that I'd like to raise for the Court is the second error as a matter of law that I believe occurred in this matter, and that's Mr. Blendu was the prevailing party in this case. It's really very simple. The Idaho local rule 54b-1 says that the party that prevails on the, quote, main issue is the prevailing party for purposes of fees. In this case, it's undisputed. The main issue was the request for contribution on the Montana judgment, that being $1.5 million. In total, Mr. Sletland sought $1,798,969.50 from Mr. Blendu. What Judge Lodge awarded, we believe erroneously, was $44,000. I think it's inconceivable under any reading of our local rule on 54 that we were not the prevailing party, particularly with respect to the contribution claim. With that said, those are the two issues we'd ask the panel to address, and I'll go now go back and address what I see the fundamental flaws to be in the plaintiff's appeal in this matter. Judge, you raised it best when you asked what could have been done in Montana. The very simple hinge pin of the plaintiff's argument on conflict of law in this case is that, quote, Montana contribution law is substantially less hospitable than Idaho. That's simply not true. Under Montana law, once Mr. Blendu settled, Mr. Sletland could have and should have requested an order of the court on a finding of negligence to allocate the negligence between the parties. And had it been 50-50, he could have gotten the full plethora of benefit of contribution by a reduction in the judgment. That's the second subpart of the Montana statute on contribution that we cited to you in our briefing. So for two years, from November of 77 until November of 99, Mr. Sletland had a full opportunity to protect his right to the effect of contribution by simply making that request in the Montana court. It didn't happen. And so the fundamental flaw in the argument is that Montana law is less hospitable simply isn't true, and therefore, it can't support the request to overturn the conflict of law decision made based on the recommendation of the magistrate judge and the adoption of that recommendation by Judge Lodge. All the roads in this case lead to Montana. These were Montana shareholders, Montana Corporation, a Montana limited partnership, a Montana generating plant operated in Billings, Montana. There's no significant relationship with the State of Idaho. The key words are different here. It's not contacts. It's the quote, unquote, most substantial relationship that the policy of conflict of law addresses. And in this case, Montana law has a keen interest in its application in this case because of the Montana Corporation and Montana shareholders and the occurrence of any negligence in Montana. Idaho law has no interest in this whatsoever. That leads to the request by the plaintiff to amend their complaint. You're exactly correct. All they did was restate contribution in another way. Paragraph 35 of the complaint, which is the one that was sought to be amended to quote, unquote, terms partnership or joint venture, starts out with the phrase that Sletland is entitled to contribution from Lendu. It's nothing more than a declaratory judgment request for contribution under the laws of the State of Montana. That contribution claim was barred, and therefore, Judge Lodge was correct. The amendment would be totally futile. It's futile for another reason. There is no such thing as joint venture or partnership when you look at those defined terms for the filing of a derivative lawsuit to shareholders. Partnership in its classic definition is co-owners of a business for profit. This was a derivative action. This wasn't co-ownership of a business for profit. And therefore, by definition, the amendment was futile because it doesn't state a separate cause of action. Lastly, I think I want to deal with the issue of the limitation of damages, although we don't agree that Judge Lodge should have awarded damages because of the parole evidence problems, which he did not address. He did limit the damages, and he did so based on two grounds. One was foreseeability. And the separate ground, which is not addressed in the plaintiff's appellant's brief in this matter, is the issue of meeting of the minds. If you accept Judge Lodge's finding that there was no meeting of the minds to share any fees beyond the issues related to the derivative action, which was the recoupment of overpayments to the corporation because of charges made by Mr. Orndorff and Mr. G.I., then you must accept the judge's finding, which is uncontested by the appellant, and that is there was no meeting of the minds between Mr. Blendon and Mr. Slutland to go beyond that point in time. And so there was never any consideration of the counterclaim. There was never any consideration of protracted litigation. There was never any consideration of Mr. Slutland's eventual bankruptcy because of the finding of his negligence in the Montana action. None of that was within the contemplation of these parties, if, in fact, there was an agreement. And our contention is that Judge Lodge's finding on that issue controls. It's uncontested in the plaintiff's appellant's brief. And, likewise, we don't believe there should have been a finding of agreement at all because it was barred by the Parole Evidence Rule. Last item, and then I'll close. On the motion to amend, I think what the case law reflects in this matter is or, excuse me, not the motion to amend, but the demand loan claim. What the case law reflects in this matter is that the loans were in the name of James P. Slutland, P.C. This litigation was filed and maintained in James P. Slutland's individual name. At the time of the filing of the complaint, these loans belonged to the P.C., to the corporate entity. Now, Mr. Slutland is a sophisticated individual. He has a law degree. He practices law, and he practices in a very complex world of energy law. It's not as if he did not understand in whose name those demand loans were made or who those demand loans belonged to. And likewise, Judge Lodge, who used to be a bankruptcy judge in his early career, found that there was no ballot assignment from the P.C. to Mr. Slutland because it did require the authority of the bankruptcy court, which was not obtained and had not been sought at the time of trial. And help me understand why the approval of the bankruptcy court was required. Because it was not in the ordinary course of the debtor's business. In other words, Mr. Slutland stated in his bankruptcy filing that he was in the business of managing his energy partnership holdings. That was his business. He was not in the business of making demand loans. And therefore, Judge Lodge found that it being outside the ordinary course of business, and Mr. Slutland admitted that at trial in his testimony, that it wasn't in the ordinary course of his business, And Judge Lodge used that as the hinge pin to apply 363 that says you must have an order of the bankruptcy court to transact any transaction which is not in the ordinary course of the Chapter 11 debtor's business. Didn't the bankruptcy court say that it was not required to approve? That has been said well after the trial of the matter and after Judge Lodge ruled. And, in fact, I just got handed a copy of that order today because I had not seen it before today. It was not something that had been done prior to the trial or prior to the time the appeal was filed in this case. So with that said, And on what basis do we review Judge Lodge's determination? I think he reviewed his determination as whether or not at the time he made that judgment he was correct as a matter of law. So is it de novo? That was my question, whether it's de novo or not. I believe it is de novo, but what the bankruptcy judge in New York chooses to do or not do isn't binding in this matter under that set of circumstances. With that said, unless there are other questions, I thank the panel for its time. Let me just ask you this. In terms of consideration for the assignment, what effect, if any, should that have on our determination as to whether or not approval was required by the bankruptcy court? Well, I think you have to look at it as you would look at any other contract judge, and that is, was there consideration for the assignment in order to support the transaction? There's no evidence in this record there was ever any consideration transferred from Mr. Slutland to James P. Slutland, P.C., in exchange for the assignment.  And what would that mean? If there was no consideration, then what would that mean in terms of whether or not bankruptcy court approval is required? Under fundamental contract principles, it's a non-event. It's not a contract. Every contract requires consideration for the transfer or for the assignment. And there is no consideration that's evidenced in this record for that assignment. It's not a contract, and I don't believe that it's valid. And as a result, from a bankruptcy standpoint, it is, in fact, a non-event. Well, but you can do an assignment as a gift. That could be the case. However, there was no evidence in the record before the trial court that it was intended or given as a gift. One would have to make an assumption to that effect because no evidence was placed in the record to determine what it was. There was no evidence either way. That's correct. Absent other questions, I thank you again for your time. Thank you very much. Your Honors, I'll have to hurry through this. I'll just – most of this will be addressed to the comments of Mr. Troutmate. With regard to the last one, first of all, I don't understand why Mr. Blundoo has any standing to raise lack of consideration as a defense. In fact, Judge Lodge didn't either. He said in his decision, so in my judgment, there are certain technicalities – I'm sorry – whether or not there has been a failure of consideration may not be something that this defendant can raise as a defense. Well, we're looking at this de novo. So we're trying to figure out whether or not the bankruptcy court was required to approve the assignment. Yes. Help us along our decision path to determine whether or not the bankruptcy court was required to approve the assignment. First of all, it did not – it was not required to approve the assignment because this was an assignment which increased the assets of the estate, did not decrease the assets of the estate. In what case authority are you relying upon to say if an assignment increases the assets of the bankruptcy estate, no approval is required? Your Honor, I don't have that at my fingertips. The statute – the bankruptcy statutes indicate that, and I'm sorry, I do not. Indicate that an assignment is? Indicate that increasing the estate as opposed to decreasing the estate is not – you What's your next point? The next point is that, in fact, the bankruptcy judge did rule that the assignment, he says, if necessary, would be granted. But he wasn't indicating that even it was necessary. And he did – But as opposing counsel points out, that was after the fact, and that's not really binding on us as another bankruptcy court. True. But what he did do, just for the edification of the court, was that he did approve the assignment, and he approved it non pro tonque back to the time of the – that the assignment was effective, which was in February of 2000 when the lawsuit was filed. So I think that it's indication, at least, that Judge Lodge's concerns that the bankruptcy court would be, quote, jealous of its jurisdiction was ill-founded, that, in fact, the bankruptcy court in New York didn't care and, in fact, found that, as he said, this was the most curious appeal – or motion that he'd ever seen. With regard to the point that was raised on the fees about this being a – barred by the decision – by the agreement, excuse me, that was made with Sletland and Blendu separately with the Goff-Waterman firm, certainly that was a decision – I mean, certainly that was a contract made between Blendu and Sletland and the Waterman firm. However, and that would prevent any oral agreements amongst that group, amongst the Sletland Waterman or Blendu Waterman. We're not talking about that. We're talking about a separate agreement, and the Pearl Evidence Rule would not roll all of the agreements that Mr. Sletland and Mr. Blendu made with regard to the division of fees amongst other attorneys. So I just – Judge Lodge properly ignored the contract with the Waterman firm as being something that would bar this. He did take into account, as he said, as I read to you earlier, all of the evidence in the case and all of the arguments in the case, and made the decision that, in fact, that the two of them, in order to pursue this joint venture that they had with regard to the filing of this lawsuit, did, in fact, agree that part of that was that they were going to have to share fees, not only with the Goff-Waterman situation, but also with their own individual counsel. And so that – the final thing was with regard to who was the prevailing party. Judge Lodge, at the end of his oral statement, said there is no prevailing party in this case. And what Mr. Trout referred to, the main issue. As I started out this argument saying, and I'll finish this, the main issue in this case was whether or not there was an agreement between these two parties. And Mr. Blendu fought from day one through this trial and to today's date saying there was no agreement. The Court found that there was an agreement, and that was the main issue. Now, we didn't prevail with as much – getting as much damages as we wanted to, but we did prevail on that main issue. The Court took that into account and decided that there was no prevailing party because of that split. Counsel, before you conclude, let me just ask you about the demand notes, the loans again. Yes. If we disagree with you regarding the increase in value of the estate, negating the need for approval, do you lose on that issue? No, I don't, because the bankruptcy court did give its approval. And it was – But that was after the fact. It was after the trial. But the fact of the matter is that he made it specifically retroactive to before the trial, that the judge said this assignment is effective as of the original date. Well, but I'm not sure that makes this wrong. It may make it enforceable. Maybe there should be some payment under it. In fact, even Judge Lodge even says, you know, I'm proud of you. I paid this. Yeah. And Mr. Slotlin tried to get that paid through the New York Bankruptcy Court, and the bankruptcy court said, no, it's back to Idaho. That's where it should be paid. But was the ruling wrong? We're determining whether the ruling was wrong at the time it was made. Was it wrong then based upon an order that was entered later? Yes, it was wrong, because he did not need to get permission from the bankruptcy court. And the bankruptcy court later ratified that by making the decision it did. But the bankruptcy court gave approval, which is what Judge Lodge said needed to be done. So was Judge Lodge wrong in saying that? No. The bankruptcy court said, if approval were needed, I'm going to give it. But by saying, if approval were needed, I think describes the fact that the bankruptcy court wasn't sure it was needed. Was this considered in the course of the ordinary day-to-day business, this assignment? Once again, the bankruptcy court said yes. It was within the course of Mr. Slotlin's activities as an investment banker. Thank you very much. Thank both of you. The case of Slotlin v. Blendu is now submitted for decision. And we've got one last case on the argument calendar this morning. That is Sundquist Homes v. Smohomish County. Thank you.
judges: Alarcon, W. Fletcher, Rawlinson